**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DATHAN STEVENS,** | : | **No. 3:25-CV-1878** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CAPTAIN ANDREWS, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Dathan Stevens initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging that numerous officials at the State Correctional Institution, Rockview (SCI Rockview), infringed his constitutional rights. His case was subsequently severed into five separate Section 1983 actions because he had attempted to join multiple, unrelated claims against different defendants in violation of Federal Rule of Civil Procedure 20(a)(2). The case presently before the court involves alleged Eighth Amendment conditions-of-confinement violations, as well as allegations of First Amendment retaliation. Upon review as statutorily required under 28 U.S.C. § 1915A(a), the court finds that Stevens has failed to state a claim upon which relief may be granted.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

## I.    BACKGROUND

During all times relevant to his complaint, Stevens was confined at SCI Rockview.  (See generally Doc. 1).  He is currently incarcerated at SCI Coal Township.  (See Doc. 10).

Stevens' complaint is overly lengthy and difficult to follow.  He structures his complaint in the following unique manner.  First, he provides a handwritten page specifically targeting one of the many named defendants.  (See Doc. 1 at 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46).  Then, he follows that handwritten page with a typewritten page that contains general allegations that he was unfairly targeted for a cell search and then placed in a "dry cell"[2] in January 2024.  (See Doc. 1 at 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47).  That general, typewritten page—which appears twenty times—changes only by the name of the defendant Stevens inserts into a blank space near the bottom of the page, changing the name to reflect the defendant discussed in the handwritten page preceding it.  (See id.).

---

[2] "A 'dry cell' is a cell that lacks water—all standing water has been drained from the toilet, the room's water supply has been shut off, and the sink and toilet have been capped to prevent inmate access.  An inmate may be placed in a dry cell when prison staff have observed the inmate attempt to ingest an item of contraband or they learn that the inmate is attempting to introduce contraband into the prison.  Dry cells are used to closely observe the inmate until natural processes allow for the ingested contraband to be retrieved.  To this end, dry cells lack all linens and moveable items other than a mattress, inmates' clothes are exchanged for a simple smock, and their movements are carefully controlled to prevent them from concealing or disposing of any retrievable contraband." Thomas v. Tice, 948 F.3d 133, 137 (3d Cir. 2020).

2

Confusingly, however, Stevens' handwritten allegations do not just involve the January 2024 cell search and dry cell placement. Rather, they concern many different types of claims and incidents, including cell searches and dry cell placement on different dates (May 2023 and September 2024), purportedly deficient mental health care, alleged excessive force, Prison Rape Elimination Act (PREA) violations and reporting, failure to address Stevens' complaints and grievances, and failure to protect against unspecified retaliation. (See id. at 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46).

Stevens named eighteen defendants: Captain Andrews, Lieutenant Wooster, Lieutenant Butler, Lieutenant Stover, Lieutenant Sherman, Lieutenant Flaherty, Major Vangordon, Superintendent B. Soloman, Deputy Superintendent Rowe, Deputy Superintendent Woodring, C.O. Sharrow, C.O. Miller, C.O. Bush, C.O. Mulfler, Lieutenant Walker, Counselor Hoover, Sergeant Ace, and Sergeant Bickle. (See id. at 2-4). He additionally included allegations against Unit Manager Clark and C.O. Pollock, (see id. at 44, 46), but he did not explicitly name these prison officials as defendants.

The court thoroughly reviewed Stevens' lengthy complaint. As best as the court could discern, Stevens was attempting to assert at least six different types of Section 1983 claims: (1) Eighth Amendment conditions of confinement related to his cell searches and placement in a dry cell on several occasions; (2) Eighth

3

Amendment deliberate indifference to serious medical needs; (3) Eighth Amendment excessive force; (4) Eighth Amendment PREA-related issues, including sexual abuse; (5) Eighth Amendment failure to protect from unspecified retaliation; and (6) First Amendment Petition Clause violations for failure to respond to complaints or grievances. (See Doc. 16 at 3-4).

The court further determined that Stevens was attempting to join multiple unrelated claims against different defendants in violation of Federal Rule of Civil Procedure 20(a)(2). (See id. at 4-5). The court noted that Stevens' complaint primarily involved allegations of Eighth Amendment conditions-of-confinement violations regarding cell searches and dry cell placements. (Id. at 4). Thus, his claims against Andrews, Sherman, Soloman, Walker, Bickle, Mulfler, Wooster, Stover, Butler, and Bush were properly joined together in the same lawsuit, as they concerned the same "series of transactions or occurrences" and contain a "question of law" that is common to all these defendants. (See id. (citing FED. R. CIV. P. 20(a)(2) (discussing requirements for permissive joinder of defendants))).

Additionally, the court noted that—liberally construed—Stevens' claims against Miller, Woodring, and Hoover could also be considered properly joined. (See id.). Stevens alleged that these defendants "neglected" or failed to respond to unspecified complaints and grievances, which complaints and grievances

4

*could* relate to his cell searches and dry cell placements. (See id. (citing Doc. 1 at 16, 18, 42)).

However, the court held that Stevens' other Section 1983 claims against different defendants were not properly joined. (See id. at 5). His claims against Rowe and Ace sounded in deliberate indifference to serious medical needs regarding their treatment of his alleged mental health issues. (See id. (citing Doc. 1 at 10, 34)). His claim against Sharrow alleged excessive force by throwing bars of soap at Stevens in his cell. (See id. (citing Doc. 1 at 12)). His claims against Flaherty and Pollock concerned sexual abuse and the handling (or mishandling) of a PREA complaint. (See id. (citing Doc. 1 at 14, 46)). And his claims against Vangordon and Clark alleged Eighth Amendment failure to protect. (See id. (citing Doc. 1 at 40, 44)).

The court explained that these unrelated claims against different defendants did not provide a basis for permissive joinder. (See id.). They were not part of the "same transaction, occurrence, or series of transactions or occurrences" underlying Stevens' claims related to his conditions of confinement at SCI Rockview, nor was there a "question of law or fact common to all defendants" such that these claims and defendants could be permissively joined in this action. (See id. (quoting FED. R. CIV. P. 20(a)(2))).

The court further explained that Stevens was free to file *separate* lawsuits based on these unrelated Section 1983 allegations, although he would be required to pay the filing fee for each separate case.  (See id. at 5-6 (citing FED. R. CIV. P. 20(a)(2); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits" not only to prevent confusion but also to ensure that prisoners pay the required filing fees under the PLRA); Redding v. Bilinski, No. 3:15-cv-1047, 2015 WL 3710842, at *1-2 (M.D. Pa. June 12, 2015) (same))).

Accordingly, the court gave Stevens the following options: he could either (1) voluntarily dismiss (with or without prejudice) his claims against Rowe, Ace, Sharrow, Flaherty, Pollock, Vangordon, and Clark from this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i); (2) request severance of this action into FIVE separate lawsuits pursuant to Federal Rule of Civil Procedure 21; or (3) some combination of the foregoing two options (for example, voluntarily dismissing all unrelated claims except his Eighth Amendment medical indifference claim against Rowe and Ace and requesting severance of that claim only).  (See id. at 6).

Stevens was additionally admonished that if he requested full or partial severance, he would be responsible for paying separate $350 filing fees for each severed case pursuant to the Prison Litigation Reform Act (PLRA).  (See id. at 6-

6

7 (citing George, 507 F.3d at 607; Redding, No. 3:15-cv-1047, 2015 WL 3710842, at *1-2)). Stevens was also cautioned that each case would be subject to the mandatory screening requirements of 28 U.S.C. § 1915A(a), which could result in dismissal of some or all the claims for failure to state a claim upon which relief may be granted. (See id. at 7 (citing 28 U.S.C. § 1915A(b)(1); 28 U.S.C. § 1915(g) (discussing PLRA's three-strikes rule for prisoners filing in forma pauperis lawsuits))). The court thus directed Stevens to carefully consider his options and their ramifications before making his decision. (See id.).

Stevens was given 21 days to notify the court of his decision. (See Doc. 17 ¶ 1). He was further warned that if he failed to timely respond, the court would be constrained to sever his case into five separate cases pursuant to Federal Rule of Civil Procedure 21. (See id. ¶ 2).

On March 3, 2026, Stevens moved for additional time to file his response. (See Doc. 18 (received by the court on March 12, 2026)). The court granted that motion, giving Stevens 21 additional days, or until April 2, 2026, to respond. (See Doc. 19 ¶ 1). Stevens was once again cautioned that if he failed to timely respond, the court would be constrained to sever his case into five separate cases under Rule 21. (See id. ¶ 3). The court additionally provided Stevens with a courtesy copy of his original 54-page complaint, as he had requested. (See Doc. 19-1).

7

The April 2, 2026 deadline came and went, but Stevens did not file a response or any other communication with the court.  Out of an abundance of caution, on April 21, 2026, the court *sua sponte* gave Stevens 14 additional days, or until May 5, 2026, to file an appropriate response.  (See Doc. 20 ¶ 1).  The court once again warned Stevens that if he did not properly respond to the court's orders, his case would be severed into five separate cases and each case would be subject to screening under 28 U.S.C. § 1915A(a).  (See id. ¶ 3).  The court also expressly informed Stevens that "any dismissal of those cases could potentially implicate the three-strikes rule provided by 28 U.S.C. § 1915(g)." (See id.).

Stevens once more failed to respond by the May 5 deadline.  (See Doc. 21 at 8).  Thus, on May 14, 2026, the court severed Stevens' lawsuit into five separate Section 1983 actions.  (See id. at 8-9).  The instant, original case— number 3:25-cv-1878—retained the primary conditions-of-confinement claims against Captain Andrews, Lieutenant Wooster, Lieutenant Butler, Lieutenant Stover, Lieutenant Sherman, Superintendent Soloman, Deputy Superintendent Woodring, C.O. Miller, C.O. Bush, C.O. Mulfler, Lieutenant Walker, Counselor Hoover, and Sergeant Bickle.  Now that the improperly joined claims have been severed from this case, Stevens' complaint is ripe for screening under 28 U.S.C. § 1915A(a).

8

## II.   STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees. See 28 U.S.C. § 1915A(a). One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]" Id. § 1915A(b)(1). This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6). See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits

attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations, quotation marks, and footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Stevens proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less

10

stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).  This is particularly true when the *pro se* litigant, like Stevens, is incarcerated.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

As noted above, Stevens' complaint appears to sound in Section 1983 Eighth Amendment conditions-of-confinement claims related to his cell searches and placement in a dry cell on several occasions.  It is also possible that Stevens is attempting to assert an unspecified First Amendment retaliation claim.  The court will examine each type of claim in turn.

### A.   Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort." Thomas v. Tice, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or inhumane treatment, such as deprivation of "basic human needs" like "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (citation omitted).

11

To state an Eighth Amendment conditions-of-confinement claim, a plaintiff must plausibly plead both objective and subjective elements. See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015). Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation. Id. (citing Farmer v. Brennan, 511 U.S. 825, 843 (1994); Wilson v. Seiter, 501 U.S. 294, 297 (1991)). "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'" Clark v. Coupe, 55 F.4th 167, 179 (3d Cir. 2023) (quoting Farmer, 511 U.S. at 834).

Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety." Chavarriaga, 806 F.3d at 226 (citing Farmer, 511 U.S. at 834). Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm." Id. at 227 (citing Farmer, 511 U.S. at 842).

As recounted above, each Defendant is included on an identical typewritten page of allegations. (See Doc. 1 at 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47). The court will therefore use this page as the starting point for Stevens' Section 1983 claims.

12

On this typewritten page, Stevens alleges that on the evening of January 12, 2024, his cell was searched for drugs by unidentified corrections officers. (See id. at 9). No drugs or other contraband were found during this or any other search. (Id.) Stevens avers that the "security branch" harassed him in a retaliatory manner by calling him a "drug dealer" and placed him in a dry cell "on numerous occasions." (Id.) He further alleges that this treatment was in response to some unidentified "protected conduct" that he had engaged in. (Id.) In other sections of his complaint, Stevens alleges that he was placed in a dry cell on two other dates: May 4, 2023, and September 10, 2024. (Id. at 8, 22, 24, 26, 28, 30, 36).

Stevens' conditions-of-confinement claims for his May 4, 2023 and January 12, 2024 dry cell placement fail because he has not alleged a sufficiently serious deprivation of life's necessities. He alleges only that he was placed in a dry cell on these dates. Notably, he does not explain how long he was held in the dry cell or what his conditions were like during each placement. These omitted factual details are crucial for a conditions-of-confinement claim, because dry cell placement alone is not a per se constitutional violation. See Thomas, 948 F.3d at 139 ("[E]ven though administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or

13

inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." (citation omitted)).

Stevens alleges that during his September 10, 2024 dry cell placement, he had "no running water, no mattress, blanket, sheets, [or] shoes."[3] (Doc. 1 at 8). These conditions, however, simply describe the general conditions of a dry cell. See Thomas, 948 F.3d at 137. Nevertheless, Stevens does aver that on two occasions during this September 2024 dry cell placement, he "urinated on himself" because the unidentified corrections officer who was monitoring him would not allow him to use the portable restroom. (Doc. 1 at 8). The court assumes, without deciding, that being held in a dry cell and being intentionally forced to urinate on oneself could rise to the level of a constitutional deprivation. This assumption, however, leads to the second, subjective prong of the conditions-of-confinement analysis: deliberate indifference.

Stevens does not plead that any named Defendant was deliberately indifferent to a serious risk to his health or safety. Indeed, as explained above, the only plausible sufficiently serious deprivation occurred on September 10, 2024, and was caused by an unidentified corrections officer who was monitoring Stevens' cell. As for the named Defendants, Stevens simply alleges that they

---

[3] Stevens does not state how long he was held in the dry cell during this September 2024 placement.

14

either conducted or ordered the cell searches, placed him in a dry cell, or took part in the decision to place him in a dry cell. Such allegations fall far short of plausibly pleading deliberate indifference to a serious risk of harm.

Accordingly, Stevens' Eighth Amendment conditions-of-confinement claims fail as to all Defendants. Having one's cell searched and being placed in a dry cell, without more, does not violate an inmate's constitutional rights. And as to the single allegation that could rise to the level of a sufficiently serious deprivation, that claim is not directed at any named Defendant. Therefore, Stevens has failed to plausibly state an Eighth Amendment claim upon which relief may be granted.

## B.    First Amendment Retaliation

Stevens also appears to allege that his First Amendment rights were violated when multiple Defendants retaliated against him for unspecified "protected conduct." This claim fails as well.

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010)). To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was

15

engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Rauser, 241 F.3d at 333).

Stevens' *prima facie* retaliation claim fails for multiple reasons. First, he does not identify what "protected conduct" he engaged in that purportedly motivated Defendants to retaliate against him. Second, he does not specify which Defendant (or Defendants) took the alleged adverse action against him. This is important, because simply calling Stevens a "drug dealer," (see Doc. 1 at 9), is not an actionable adverse action, whereas issuing a "fraudulent misconduct," (see id.), is an adverse action. See Watsom v. Rozum, 834 F.3d 417, 423 (3d Cir. 2016). Third, Stevens does not plausibly allege causation, *i.e.*, why a particular Defendant would be motivated to retaliate against him for his constitutionally protected conduct. Finally, most of Stevens' First Amendment allegations simply restate the elements of a retaliation claim, (see Doc. 1 at 9), and these types of legal conclusions may be disregarded. See Connelly, 809 F.3d at 787.

16

## C.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile." Grayson, 293 F.3d at 114. The court will grant Stevens leave to amend, as it is conceivable that he could amend his pleadings to plausibly allege a constitutional violation.

If Stevens chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth Stevens' Section 1983 claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Stevens must address the pleading deficiencies identified in this Memorandum. In particular, he must provide more factual details as to the nature of his allegedly unconstitutional conditions of confinement. He must also name appropriate defendants and specify the offending action (or inaction) by those defendants, thereby establishing the defendants' personal involvement in the alleged unconstitutional conduct.

Stevens must also sign the amended complaint and indicate the nature of the relief sought. He may not include unrelated claims against different defendants in violation of Federal Rule of Civil Procedure 20(a)(2). If he does not timely file an appropriate amended complaint, dismissal of his complaint will

17

automatically convert to dismissal with prejudice and the court will close this case.

## IV.    CONCLUSION

Based on the foregoing, the court will dismiss Stevens' complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Leave to amend will be granted.  An appropriate Order follows.

Date: 7/20/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

18